465 So.2d 986 (1985)
VALLEY ELECTRIC MEMBERSHIP CORPORATION, INC., Plaintiff-Appellant/Appellee,
v.
Mrs. Rivers R. WALLACE, et al., Defendants-Appellant/Appellee.
No. 84-161.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*987 Brittain & Williams, Jack O. Brittain, Natchitoches, for defendants-appellant, appellee.
Whitehead & McCoy, Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee, appellant.
Before DOMENGEAUX, KNOLL and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial judge's award of compensation and attorney's fees, made in this expropriation suit, is correct.
This is an expropriation suit instituted by Valley Electric Membership Corporation, Inc., against River Rhodes Wallace, Joseph Rhodes, Jr., and Willa Vae Biggs. Defendants contested plaintiff's right to expropriate and rejected its original offer to them of the sum of $16,820.00 for the land sought. The trial judge found plaintiff had the right to expropriate and awarded defendants the sum of $27,900.00 for the land taken, made no award for severance damages to defendants' remaining land, awarded *988 as costs the fees for each of plaintiff's expert witnesses and the fee for the defendants' expert witness, and awarded $4,000.00 for plaintiff's attorney's fees. Both plaintiff and defendants have appealed from this judgment. We affirm.
Plaintiff appealed alleging that:
(1) The trial court erred in classifying the property expropriated as having the highest and best use for commercial purposes rather than only having the highest and best use for low density rural residential property; and
(2) The trial court's award of attorney's fees was excessive.
The defendants appealed alleging that:
(1) The trial court failed to grant defendants' severance damages for the remainder of their property after the taking;
(2) The trial court erred in holding that the highest and best use for the property taken was not industrial property; and
(3) The trial court erred in not awarding a larger sum for attorney's fees.
The trial judge, in his written reasons for judgment, gave the following general description of the location of the defendants' land and the portion of it sought by plaintiff as follows:
"Defendants are the owners of a 307.79 acre tract of land located generally southeast of the City of Natchitoches in Natchitoches Parish, which has traditionally been used for cotton and beans. Plaintiff wishes to appropriate 2.79 acres immediately adjacent to a preexisting substation owned and operated by Louisiana Power and Light Company and to transmit this electrical energy to several other substations to service its rural electrical customers.
"The tract of land sought to be expropriated measures 197.6 feet on the east, where it is bordered by a blacktop highway commonly regarded as Natchitoches Parish Road 250, sometimes known as Louisiana Highway 494. It is bounded on the south by another blacktop which intersects the first blacktop road, with this intersecting road being commonly known as the `Lateral Road,' but which is designated as Natchitoches Parish Road 250-A. The south line is 507.5 feet in length. It is bounded on the west by 334 feet of agriculture land belonging to the defendants and bounded on the north by the substation of Louisiana Power & Light Company and the northern boundary line is 425.8 feet long.
* * * * * *
"The general area is sparsely populated, agricultural land, with most of the buildings being scattered residential buildings along the blacktop roads referred to above and scattered farm buildings and tractor sheds associated with the operations of the various farms."
A plat of a survey of the property sought to be taken by Valley Electric from defendants, and the adjacent area, filed in evidence as Plaintiff Exhibit One, is attached in order to make an understanding of the facts of this case more intelligible. We have added to the plat certain data to make the plat more self-explanatory.

COMPENSATION
At trial the parties presented substantially different evidence regarding the value of the 2.79 acres of land that was sought to be taken. One of plaintiff's experts, Mr. Randy S. LaCaze, a qualified real estate appraiser, was of the opinion that the highest and best use of the property was for "low density rural, residential property." Based on comparable sales of rural, residential property, Mr. LaCaze concluded that the value of the entire 2.79 acres prior to the taking was $16,182.00.
Also testifying as an expert appraiser for the plaintiff was Mr. Barry Guillet, who testified that the 2.79 acres might have some "remote residential potential," but that most purchasers would avoid this location as a possible site for building a residence because of the already existing Louisiana Power and Light substation. For this reason he felt the highest and best use of the property was for agriculture and, based on comparable sales of property suitable *989 for agricultural purposes, Mr. Guillet concluded that prior to the taking the value of the entire tract was $14,000.00.
Defendants' expert appraiser, Mr. R. Stacy Williams, testified that because of the location of the pre-existing electrical substation he first thought that the highest and best use of the property sought to be taken would be for commercial use. Mr. Williams further testified after hearing the testimony of Mr. LaCaze and Mr. Guillet, who both testified that this was the only possible location in Natchitoches Parish, Louisiana for plaintiff's electrical substation because it had to be located adjacent to the pre-existing Louisiana Power and Light substation, that based on this information he would change his classification of the highest and best use of the property sought from commercial use to industrial use. Based on comparable sales of property suitable for commercial development, he concluded that prior to the taking the land was valued at $27,900.00. Mr. Williams further stated that in the event the property sought to be taken was classified as suitable for industrial use that prior to the taking the land would be valued at $69,750.00.
The trier of fact is not required to accept or reject the testimony of each witness in toto. The trial judge is not required to accept the precise value fixed by any expert. He may instead make an award in an amount to which no expert testifies since the trial court is empowered to evaluate the weight to be given to each witness' testimony, as well as to make factual determinations as to which of the facts relied upon by the witnesses relevantly influences market value and severance damages. Greater Baton Rouge Airport District v. Carrick, 258 So.2d 640 (La.App. 1st Cir.1972); State, Dept. of Hwys. v. William T. Burton Indus., Inc., 219 So.2d 837 (La.App. 3rd Cir.1969), writ den., 254 La. 14, 222 So.2d 67 (1969).
The trial court may not, however, substitute its own opinion for that of the experts who testified at trial (i.e., completely disregard such testimony) when such testimony is well grounded from the standpoint of good reasoning. State, Dept. of Highways v. Eubanks, 345 So.2d 533 (La. App. 3rd Cir.1977); State, Department of Highways v. Thurman, 231 So.2d 692 (La. App. 1st Cir.1970).
The effect given to expert opinion testimony is governed by the weight such testimony is accorded by the trier of fact. This weight is determined by the professional qualifications and experiences of the expert, the facts and studies upon which the opinion is based, and when land appraisals are involved, the familiarity with the locality. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).
Finally, it is well settled in expropriation suits that much discretion is granted to the trial court in the evaluation of and weight to be given to the testimony of each expert witness. The findings of fact by the trial court will not be disturbed on appeal unless such findings are clearly erroneous. Greater Baton Rouge Airport District v. Carrick, supra.
The issue of the highest and best use of property sought to be expropriated and its value is a question of fact. The issue as to whether or not the property remaining to a condemnee has suffered severance damage is also essentially a question of fact. Our jurisprudence mandates that an appellate court should not alter a trial court's finding of fact in the absence of manifest or clear error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). This principle of appellate review is equally applicable in matters of expropriation. City of Lafayette v. Delhomme Funeral Home, 413 So.2d 348 (La. App. 3rd Cir.1982); State, Dept. of Transp. v. Boyce Gin Co-op., 397 So.2d 1087 (La. App. 3rd Cir.1981); City of Lafayette v. Cason, 393 So.2d 424 (La.App. 3rd Cir. 1980); State, Dept. of Transp. & Dev. v. Van Willet, 383 So.2d 1344 (La.App. 3rd Cir.1980), writ den. 390 So.2d 1370 (La. 1980). Our review of the record in this *990 case reveals not only a reasonable factual basis for the trial court's conclusion but that there is no clear error in such finding.
The trial judge accepted Mr. Williams' conclusion that the highest and best use of the property sought was for commercial use and accepted his evaluation of the property at $27,900.00. We find that there was no manifest error in the trial judge's ruling.

SEVERANCE DAMAGES
In Michigan Wisconsin Pipeline Company v. Fruge, 227 So.2d 606 (La.App. 3rd Cir.1969), writ refused, 255 La. 149, 229 So.2d 732 (La.1970) we stated at page 610:
"Our jurisprudence is established that severance damages to the remaining property cannot be presumed and will not be awarded unless the owner shows by competent evidence that the value of the remaining land has been diminished by the taking. Texas Gas Transmission Corporation v. Young, La.App., 198 So.2d 453 (3rd Cir.1967)." Michigan Wisconsin Pipeline Company v. Fruge, supra, at page 610.
See Louisiana Resources Co. v. Greene, 406 So.2d 1360 (La.App. 3rd Cir.1981), writ denied 412 So.2d 84 (La.1982).
The trial judge heard testimony from both sides on the issue of severance damages. He did not specifically address the issue in his written reasons for judgment, but it is obvious that he considered the claim for severance damages. In his reasons for judgment the trial judge stated:
"This Court is well familiar with this particular site and agrees with Mr. R. Stacy Williams that it would be almost impossible to find persons who would want to buy this 2.79 acre tract of land and build a home next to the preexisting electrical substation. There are numerous known adverse effects of living near an electrical substation.:"
The defendants seek severance damage for their river front property, east of the blacktop road, and for their remaining acreage, adjacent to and west of the property being taken. Plaintiff's experts, Mr. LaCaze and Mr. Guillett, both testified no severance damages existed as to these tracts because of the taking by plaintiff. The defendants' expert, Mr. Williams, testified that any property within six hundred feet of the existing Louisiana Power and Light substation had already been damaged, insofar as its use for residential purposes, by the construction of that electrical substation. The trial judge recognized this fact by stating that he agreed with Mr. Williams' opinion that it would be almost impossible to find persons who would buy and build a home near the pre-existing electrical substation. Defendants argue that having the plaintiff's electric substation built in front of their river front property, only separated by a blacktop road, would diminish the value of this property for residential use. Defendants also argue that having the plaintiff's electrical substation built adjacent to their remaining acreage on the west would also diminish the value of this property for residential use. In reviewing the record as a whole we find that the existing electrical substation has already adversely effected the value of defendants' property located near it for residential purposes and that plaintiff's construction of its electrical substation 150 to 200 feet closer to defendants' property would not create any further damage. Defendants have not proved to be a legal certainty the damages to their remaining property. Therefore, no award for severance damages to defendants' remaining property can be made. State, Dept. of Transp. State, Dept. of Highways v. Champagne, 371 So.2d 626 (La.App. 1st Cir.1979), writ denied 375 So.2d 645, 646 (La.1979).

ATTORNEY'S FEES
The trial judge awarded defendants $4,000.00 for attorney's fees. On appeal, plaintiff argues that the award was excessive and should be reduced. Defendant asks for an increase in the amount of attorney's fees awarded. LSA-R.S. 19:8 provides that the court may award attorney's *991 fees if the amount awarded the landowner exceeds the amount offered by the expropriating authority. Therefore, the decision of whether or not to award attorney's fees is left to the court's discretion. City of Lafayette v. Delhomme, 401 So.2d 1044 (La.App. 3rd Cir.1981), writ den., 409 So.2d 632 (La.1981) and cases cited therein; Claiborne Electric Coop., Inc. v. Garrett, 357 So.2d 1251 (La.App. 2nd Cir.1978), writ denied 359 So.2d 1306 (La.1978); La. Intrastate Gas Corp. v. Guidry, 357 So.2d 830 (La.App. 3rd Cir.1978), writ denied 359 So.2d 1308 (La.1978).
A difference of $11,718.00 between the amount awarded and the amount offered for defendants' property is certainly large enough to justify the defendants' action of questioning in a court of law the amount offered them by Valley Electric and, therefore, to warrant an award of attorney's fees. After reviewing the evidence in the instant case we conclude that the trial court did not abuse its discretion in awarding $4,000.00 as attorney's fees to defendants for representation in this matter. We consider the award to be reasonable and conclude that such sum is sufficient to compensate for the services rendered by counsel for defendants both at the trial level and on appeal.
For the above and foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are to be shared equally by plaintiff-appellant and defendants-appellants.
AFFIRMED.
*992